FILED
U.S. District Court
District of Kansas
09/08/2026
Clerk, U.S. District Court
By: SND Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**SHAWANDA L. HATLEY,**

**Plaintiff,**

**v.** **CASE NO. 26-3261-JWL**

**JOHN/JANE DOE, et al.,**

**Defendants.**

**MEMORANDUM AND ORDER**

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. The Court grants Plaintiff's motion for leave to proceed in forma pauperis. This matter is before the Court for screening Plaintiff's Amended Complaint (Doc. 5). Plaintiff has also filed a Motion for Appointment of Counsel (Doc. 4) and Motion for Leave to Conduct Expedited Discovery (Doc. 6).

## I. Nature of the Matter before the Court

Plaintiff claims that Kansas Department of Corrections ("KDOC") officials are responsible for her overdetention. Plaintiff claims that on May 26, 2023, she was sentenced to a 34-month term of imprisonment in the District Court of Sedgwick County, Kansas. (Doc. 5, at 4); *see State v. Hatley*, Case No. 2017-CR-003169 (District Court of Sedgwick County, Kansas). She claims that the district court "unconstitutionally" included a prior 2017 conviction for reckless criminal threat (from Sedgwick County Case No. 17-CR-343) in her criminal history score, resulting in a criminal history score of D. *Id.*

Plaintiff claims that prior to her transfer to KDOC custody on June 27, 2023, she spent 72 days in jail. *Id.* Plaintiff claims that:

> On July 3, 2023, Defendant John/Jane Doe 1 manually calculated, entered, and certified a KDOC sentence computation setting Plaintiffs projected parole release date as June 23, 2025. This

> computation was subsequently reviewed, approved, and authorized by Defendant John/Jane Doe 2. In performing this calculation, John/Jane Doc 1 and John/Jane Doe 2 applied the unconstitutional 34-month sentence, failing to identify that her prior reckless criminal threat conviction was facially void and unconstitutional under *State v. Boettger*, 310 Kan. 800 (2019), and could not legally be counted under K.S.A. § 21-6810( d)(9).

*Id*. at 5 (italics added). Plaintiff was released from KDOC custody on June 23, 2025. *Id*.

On January 30, 2026, the Kansas Court of Appeals issued its opinion in Case No. 23-126498-A, finding that Plaintiff's criminal threat conviction could not be used for criminal history scoring, vacating her 34-month sentence, and remanding to the district court for resentencing. *Id*. The appellate mandate was received by the Sedgwick County District Court on March 20, 2026, and on May 22, 2026, that court resentenced Plaintiff to a 19-month sentence with a statutory 15% good-time credit potential. *Id*.

Plaintiff asserts that a 19-month sentence is equivalent to approximately 580 days, and with 15% good-time credit the maximum custodial portion of her corrected sentence was approximately 492 days. *Id*. at 6. She claims that after subtracting her 72 days of jail credit, she should have served only 420 days. *Id*. Plaintiff claims that she was actually in KDOC custody from June 27, 2023 to June 23, 2025, and was unlawfully imprisoned for 236 days beyond her lawful release date. *Id*.

As Count I, Plaintiff alleges that she was deprived of liberty without due process of law in violation of the Fourteenth Amendment. *Id*. at 7. Plaintiff claims that John/Jane Doe 1 and John/Jane Doe 2 deprived her of due process "by calculating, certifying, and approving an illegal release date of June 23, 2025, and keeping her physically confined for 236 days past her lawful release date of October 31, 2024, despite the facial unconstitutionality of her sentence under K.S.A. § 21-6810(d)(9) and *State v. Boettger*." *Id*. (italics added). Plaintiff claims that these actions were

"reckless, intentional, or deliberately indifferent to her constitutional rights and were the moving force behind her 236-day overdetention and resulting loss of physical liberty." *Id*.

As Count II, Plaintiff alleges cruel and unusual punishment in violation of the Eighth Amendment based upon the same facts. *Id*. at 7–8. Plaintiff claims that Defendants acted with deliberate indifference in keeping her incarcerated beyond her corrected, lawful term of imprisonment. *Id*. at 8. Plaintiff claims that Defendants "had access to her criminal records and her unconstitutional 2017 criminal history score but ignored KDOC's clear, non-discretionary duty to calculate her sentence in accordance with Kansas law and *Boettger*, directly causing her prolonged physical confinement." *Id*. (italics added).

As Count III, Plaintiff seeks injunctive relief forcing Defendant Jeff Zmuda, Secretary of Corrections, to supply the identities of state employees responsible for her overdetention. *Id*. at 8–9. Plaintiff claims that the statute of limitation will expire on June 23, 2027, and therefore her claims may be extinguished before they can be litigated. *Id*. at 9.

Plaintiff names as defendants: John/Jane Doe (1), KDOC Sentence Computation Official; John/Jane Doe (2), KDOC Sentence Computation Official; and Jeff Zmuda, KDOC Secretary of Corrections. Plaintiff seeks declaratory relief, $75,000 in compensatory damages, punitive damages, and an injunction requiring the Secretary of Corrections to produce documentation allowing her to identify the names of the records clerks and supervisors responsible for her overdetention. *Id*. at 9–10.

Plaintiff attached documents to her Amended Complaint, including the original sentencing order and the order sentencing her after remand. (Docs. 5–1 and 5–2.) Many of the other attached documents consist of blacked out pages or illegible pages. *See* Docs. 5–3 and 5–4. Plaintiff also attaches the mandate from the Kansas Court of Appeals and the Kansas Adult Supervised

Population Electronic Repository ("KASPER") report for Plaintiff. (Docs. 5–5, 5–6.)

**II. Screening Standards**

The Court is required to dismiss a case filed by a plaintiff proceeding in forma pauperis:

> at any time if the court determines that—
> (A) the allegation of poverty is untrue; or
> (B) the action or appeal—
> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual

allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

Plaintiff claims that KDOC sentence computation officials violated her constitutional

rights due to her overdetention. The decision by the Kansas Court of Appeals sets forth the history of her state criminal proceedings. In case 17CR343 (Case 1) the state district court sentenced Plaintiff to a controlling sentence of 12 months in prison but suspended the sentence and granted probation. *State v. Hatley*, 2026 WL 252906, at *1 (Kan. Ct. App. Jan. 30, 2026). "The State alleged probation violations in Case 1 and charged Hatley with failure to register in case No. 17CR3169 (Case 2)." *Id.* In April 2023, Plaintiff pled guilty to violating KORA in Case 2, and the district court dismissed the probation violation allegations in Case 1. *Id.* The Kansas Court of Appeals found that:

> According to the presentence investigation report, Hatley's criminal threat in Case 1 classified Hatley with a D criminal history score because it was a person felony. The district court determined Hatley had a D criminal history score and imposed a 34-month prison sentence plus 24 months of postrelease supervision. Hatley did not challenge the district court's criminal history score determination.
>
> Hatley timely appealed. After Hatley filed her appeal, she filed a letter of additional authority under Supreme Court Rule 6.09 (2025 Kan. S. Ct. R. at 40), citing *State v. Smith*, 320 Kan. 62, 90–91, 563 P.3d 697 (2025). In the letter, Hatley argued that her criminal threat conviction should not be counted in her criminal history score because *Smith* held: " 'If a prior conviction arose under a statute "that has since been determined unconstitutional by an appellate court," it cannot be counted in a criminal history score' even if the ruling of unconstitutionality is later overturned by a future appellate court." The State did not reply to this letter.

*Id*. at *1–2.

The Kansas Court of Appeals found that the district court erred when it included Plaintiff's criminal threat conviction in her criminal history score. *Id*. at *4. The court held that although Plaintiff did not challenge her criminal history score when she pled guilty in 2023, at that time the *Boettger* case made reckless criminal threat unconstitutional. *Id*. at *3 (citing *State v. Boettger*, 310 Kan. 800, 822–23, 450 P.3d 805 (2019)). The court therefore remanded the case for the district court to recalculate Plaintiff's criminal history score and resentence Plaintiff. *Id*. at *4.

Plaintiff was originally sentenced in the Sedgwick County District Court on May 26, 2023. A Kansas Judicial Branch online CaseSearch of Plaintiff's appellate case shows that her Notice of Appeal was docketed on June 20, 2023. *See State v. Hatley*, Case No. 126498 (Kansas Court of Appeals). Plaintiff filed her Rule 6.09 Letter on March 6, 2025. *Id.* The Kansas Court of Appeals' decision was filed on January 30, 2026. *Id.* The mandate was issued on March 20, 2026. *See State v. Hatley*, Case No. SG2017-CR-003169 (District Court of Sedgwick County, Kansas). Plaintiff's resentencing date is May 22, 2026. *Id.*

It does appear that Plaintiff served more time in custody than she was ordered to serve upon remand and resentencing.[1] On June 3, 2026, the district court entered its order resentencing Plaintiff after the remand. *Id.* The order shows a resentencing date of May 22, 2026, and resentences Plaintiff to 19 months of incarceration with 24 months of postrelease supervision. *Id.* The order includes a Note, as follows:

> From 03/21/23 to 04/14/23, defendant was also held on City of Wichita Case Number 23CM721. From 03/21/23 to 04/14/23 and from 05/11/23 to 05/26/23, defendant was also held on 17CR343. As this case is consecutive to all other convictions, defendant is not eligible for duplicate credit for these dates in 17CR3169.

*Id.* It appears that Plaintiff was not given credit for the 72 days of jail time because it was credited to prior sentences. The order shows that Plaintiff served 728 days in KDOC custody from June 27, 2023 to June 23, 2025. *Id.*

Plaintiff argues that KDOC sentence computation officials are responsible for her overdetention. However, while she was serving the custody portion of her sentence the state court's original sentencing order was still in effect. Plaintiff's original sentence was not

[1] Although Plaintiff claims she was entitled to 15% good time credit, it is not clear whether or not she qualified for that credit. She attaches her KASPER report to her Amended Complaint showing that she received three disciplinary reports in August and November of 2023. *See* Doc. 5–6, at 2. She also claims that she was entitled to 72 days of jail credit, but as set forth above, that jail credit was applied to different sentences.

invalidated until the Kansas Court of Appeals ruled on her appeal—after she had already served the custody portion of her sentence and was released.

Government officials enjoy quasi-judicial immunity when executing facially valid court orders.[2] The Tenth Circuit has held that "[j]ust as judges acting in their judicial capacity are absolutely immune from liability under section 1983, official[s] charged with the duty of executing a facially valid court order enjoy[ ] absolute immunity from liability for damages in a suit challenging conduct prescribed by that order." *Moss v. Kopp,* 559 F.3d 1155, 1163 (10th Cir. 2009) (citations omitted). Absolute immunity for such officials is needed to ensure that they can perform their official duties without the need to secure permanent legal counsel. *Id.* (citations omitted).

In *Valdez v. City and Cnty. of Denver*, the court discussed the policy behind extending judicial immunity to executing officials, as follows:

> The extent of government officials' immunity depends upon the likely effect their exposure to liability will have on the operation of effective government in a particular context, balanced against the potential for a deprivation of individual rights in that context . . . Tension between trial judges and those officials responsible for enforcing their orders inevitably would result were there not absolute immunity for both. Officials employed to implement facially valid court orders could choose: They may disregard the judge's orders and face discharge, or worse yet criminal contempt, or they may fulfill their duty and risk being haled into court. Judge Learned Hand recognized years ago that the fear of suit will "dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." Officials such as the defendants must not be required to act as pseudo-appellate courts scrutinizing the orders of judges. The public interest demands strict adherence to judicial decrees. The Supreme Court has stated that "[p]ublic officials . . . who fail to . . . implement decisions when they are made do not fully and faithfully perform the duties of their offices." Absolute immunity will ensure the public's

[2] "The 'absolute immunity' available to individuals executing a court order is also sometimes alternatively referred to as 'quasi-judicial immunity.'" *Moss v. Kopp*, 559 F.3d 1155, at n.9 (10th Cir. 2009) (citing *Turney*, 898 F.2d at 1472).

> trust and confidence in courts' ability to completely, effectively and finally adjudicate the controversies before them.

*Valdez v. City and Cnty. of Denver*, 878 F.2d 1285, 1287–89 (10th Cir. 1989) (internal citations omitted).

However, for the state officials to be entitled to quasi-judicial immunity, "the judge issuing the disputed order must be immune from liability in his or her own right, the officials executing the order must act within the scope of their own jurisdiction, and the officials must only act as prescribed by the order in question." *Moss*, 559 F.3d at 1163. In addition, the court order must be "facially valid." *Id.* at 1164 (citing *Turney*, 898 F.2d at 1472 (holding that officials charged with the duty of executing a facially valid court order enjoy absolute immunity)).

Nothing in Plaintiff's Amended Complaint suggests that the state court judge sentencing her lacks immunity from liability in his own right. A state judge is absolutely immune from § 1983 liability except when the judge acts "in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (articulating broad immunity rule that a "judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority . . . ."); *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994). Only actions taken outside a judge's judicial capacity will deprive the judge of judicial immunity. *Stump*, 435 U.S. at 356–57. Plaintiff alleges no facts whatsoever to suggest that the sentencing judge acted outside of his judicial capacity. "A judge is immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of 'grave procedural errors.'" *Moss*, 559 F.3d at 1163–64 (quoting *Stump,* 435 U .S. at 359). When immunity is at issue, the judge's jurisdiction must be construed broadly and "'the necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him.'" *Id.* at 1164 (quoting *Stump,* 435 U.S. at 356).

Nothing in the Amended Complaint suggests that Plaintiff's state court judge lacked jurisdiction to sentence her. Likewise, nothing suggests that any KDOC official acted outside of their own jurisdiction or failed to only act as prescribed by the original sentencing order.

Plaintiff has also failed to allege that the original sentencing order was not "facially valid." In *Moss v. Kopp*, the Tenth Circuit addressed whether an order is facially valid as follows:

> A key requirement that we have found necessary to the application of quasi-judicial immunity where government officials are executing court orders is the requirement that the order be "facially valid." However, we have acknowledged that even assuming that an order is infirm as a matter of state law, it may be facially valid, as "facially valid" does not mean "lawful," and erroneous orders can be valid. We explained: "State officials 'must not be required to act as pseudo-appellate courts scrutinizing the orders of judges,' but subjecting them to liability for executing an order because the order did not measure up to statutory standards would have just that effect." Further, "[t]o allow plaintiffs to bring suit any time a state agent executes a judicial order which does not fulfill every legal requirement would make the agent 'a lightning rod for harassing litigation aimed at judicial orders.'" "Simple fairness requires that state officers 'not be called upon to answer for the legality of decisions which they are powerless to control.'"
>
> We have also noted that a narrow conception of facial validity would deprive the court of most of the benefit it derives from the existence of quasi-judicial immunity for officers carrying out its orders because the unhesitating execution of court orders is essential to the court's authority and ability to function, and state officers subject to litigation might neglect to execute these orders. Even worse, "'a fear of bringing down litigation on the [officer executing the order] might color a court's judgment in some cases.'" In short, "'[t]he public interest demands strict adherence to judicial decrees.'"

*Moss v. Kopp*, 559 F.3d at 1165 (internal citations omitted); *see also Welch v. Saunders*, 720 F. App'x 476, 481 (10th Cir. 2017) (unpublished) (stating that "for an order to be 'facially valid' means simply that it is valid on its face" and does not require officials to research the law, check court records, or "do anything beyond looking at the face of the order" ).

Plaintiff has not alleged that the sentence computation officials failed to follow the original sentencing order that was not invalidated until after she was released. Rather, she suggests in her Amended Complaint that they "applied the unconstitutional 34-month sentence, failing to identify that her prior reckless criminal threat conviction was facially void and unconstitutional under *State v. Boettger*, 310 Kan. 800(2019), and could not legally be counted under K.S.A. § 21-6810( d)(9)." (Doc. 5, at 5) (italics added). However, nothing in Plaintiff's Amended Complaint suggests that the original sentencing order was not "facially valid" as that term has been interpreted by the Tenth Circuit.

Plaintiff does not claim that she made any prison officials aware that her sentence may be invalid. She did not raise the issue regarding her criminal history score until almost a year after she filed her appeal. The Kansas Court of Appeals stated that she raised the issue in a letter of additional authority under Supreme Court Rule 6.09, where she argued that her criminal threat conviction should not be counted in her criminal history score. The docket in her appellate case shows that a Rule 6.09 letter was filed on March 6, 2025. The Kansas Court of Appeals' decision was filed on January 30, 2026—after she was released from custody.

In *White v. Lucero*, the prison officials appealed the district court's denial of their motion to dismiss based on qualified immunity. *See White v. Lucero*, 135 F.4th 1213 (10th Cir. 2025). The Tenth Circuit reversed, finding that:

> [n]o controlling Tenth Circuit law clearly establishes that prison officials act unlawfully in keeping a defendant incarcerated when they are relying on a facially valid judicial sentencing order, even if the officials believe the order was made in error. And neither does our case law put prison officials on notice that they have a duty or the power to disregard a judicial sentencing order if they suspect it is flawed.

*Id*. at 1215. The Tenth Circuit cited its case in *Dyer v. Carlson*, where "Dyer sued corrections officials under § 1983, arguing that although he told several corrections officials that his sentence was invalid, they failed to do anything about it." *Id*. at 1221 (quoting *Dyer v. Carlson*, 2024 WL 3290231 (10th Cir. 2024)). The court in *Dyer* "granted qualified immunity to corrections officials where the inmate 'failed to show that defendants—who [were] merely prison officials—ha[d] any authority, let alone duty, to review the legality of the parole board's revocation orders and correct any orders it deem[ed] illegal.'" *Id*. (quoting *Dyer*, 2024 WL 3290231). The court in *White* distinguished situations where prison officials lengthened an inmate's sentence contrary to a court order. *Id*. at 1222.

The court in *White* stated that state officials are not "pseudo-appellate courts scrutinizing the orders of judges." *Id*. at 1223 (citation omitted). "That is not their job; '[t]he Constitution does not require personnel outside the judiciary to seek, find, and fix judicial errors.'" *Id*. (citation omitted). "To the contrary, '[p]rison officials may properly assume that they have the authority to execute the sentencing orders delivered to them by the court without fear of civil liability.'" *Id*. (citation omitted). "[O]nce the [sentencing] court issues a facially valid sentencing order, no clearly established law permits [prison officials] to disregard it." *Id*. at 1224.

The Court is required by statute to dismiss a case if at any time the Court determines that the action "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(b)(2)(B)(iii). Plaintiff must show good cause, in writing to the undersigned, why this matter should not be dismissed under § 1915(b)(2)(B)(iii). Failure to respond by the deadline may result in dismissal of this matter without further notice.

**IV. Motion for Appointment of Counsel**

Plaintiff has filed a motion for appointment of counsel, arguing that she is financially

unable to obtain counsel, her case has merit, and the issues are complex and will present high procedural hurdles. (Doc. 4, at 1.) Plaintiff argues that she needs the assistance of counsel to help her identify the KDOC officials responsible for computing her sentence before her claim is barred by the statute of limitations. *Id*. at 2. She claims that the two-year statute of limitations will expire on June 23, 2027. *Id*. at 4.

The Court has considered Plaintiff's motion for appointment of counsel. There is no constitutional right to appointment of counsel in a civil case. *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995). "Rather, a court has discretion to *request* an attorney to represent a litigant who is proceeding in forma pauperis" in a civil case. *Johnson v. Johnson*, 466 F.3d 1213, 1217 (10th Cir. 2006) (emphasis added) (citing 28 U.S.C. § 1915(e)(1)). In other words, if this motion is granted, it means only that the Court will request that an attorney volunteer to be appointed to represent Plaintiff at no cost to Plaintiff. The Court cannot guarantee that an attorney will volunteer. *See Rachel v. Troutt*, 820 F.3d 390, 396 (10th Cir. 2016) ("Courts are not authorized to appoint counsel in § 1983 cases; instead, courts can only 'request' an attorney to take a case.").

The decision whether to appoint counsel—meaning to request counsel to provide representation at no cost to Plaintiff—in a civil matter lies in the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant appointment of counsel. *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (citing *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)). It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (citing *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to request volunteer counsel for Plaintiff, the Court has considered "the merits of the prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Rucks*, 57 F.3d at 979; *Hill*, 393 F.3d at 1115. This case is subject to dismissal. Plaintiff also appears capable of adequately presenting facts and arguments. Thus, the Court will deny the motion without prejudice to refiling if this matter survives screening.

**V. Motion for Leave to Conduct Expedited Discovery (Doc. 6)**

Plaintiff seeks leave to serve her "First Request for Production of Documents" on the KDOC Secretary of Corrections. (Doc. 6, at 1.) Plaintiff seeks the production of documentation to identify the sentence computation and supervisory officials "who personally participated in her 236-day overdetention." *Id*. Plaintiff claims that although the KDOC records custodian provided her with a 13-page "partial release" of records, the names of officials and office initials were blacked out or omitted. *Id*. at 2–3. She claims that the KDOC refuses to produce unredacted files, demanding a nonitemized flat fee of $160.00 and asserting a discretionary exemption under K.S.A. § 45-221(a)(29). *Id*. at 3.

Plaintiff seeks discovery to identify the KDOC officials responsible for calculating her sentence. The Court has found that Plaintiff's claims against those defendants are subject to dismissal. Furthermore, this case has not passed screening and any request for discovery is premature. Therefore, the motion is denied without prejudice.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's motion for leave to procced in forma pauperis (Doc. 3) is **granted.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Appointment of Counsel (Doc. 4) is **denied without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to Conduct Expedited Discovery (Doc. 6) is **denied without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff shall have until **October 8, 2026,** in which to show good cause, in writing to the undersigned, why this matter should not be dismissed for the reasons set forth in this Memorandum and Order.

**IT IS SO ORDERED**.

**Dated September 8, 2026, in Kansas City, Kansas.**

**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**